IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CODY RAWLS, *et al.*                                                      PLAINTIFFS

vs.                              Case No. 1:09-cv-01037

UNION PACIFIC RAILROAD, *et al.*                          DEFENDANTS

## REPORT AND RECOMMENDATION
## OF A UNITED STATES MAGISTRATE JUDGE

Before this Court is Defendants' Motion for Partial Summary Judgment.  ECF No. 58.

Defendants filed this Motion on July 21, 2010.  *Id.*  On January 7, 2011, Plaintiffs responded to this

Motion.  ECF No. 86.  Defendants filed a Reply Brief on February 4, 2011. ECF No. 97.  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), on September 22, 2010, the Honorable

Harry F. Barnes referred this Motion to this Court for the purpose of making a report and

recommendation.  ECF No. 73.  This Motion is now ready for consideration, and, in accordance with

the following reasoning, this Court recommends this Motion be **GRANTED IN PART and**

**DENIED IN PART.**

## 1. Background

This litigation arose from a train accident that occurred on May 23, 2008, in Columbia

County, Arkansas.  On that date, Plaintiffs Cody Rawls and Roy Dell Johnson were traveling north

on Oak Street in McNeil, Arkansas.  At the same time, a Union Pacific ("U.P.") train was traveling

west on the railroad tracks towards the Oak Street crossing.  While crossing the tracks at the Oak

Street crossing, Rawls's 1988 Chevrolet pickup truck stalled and was struck by the oncoming train.

Before the impact, Johnson was able to escape from the truck.  However, Rawls was unable to exit

the vehicle before the impact. He was later found approximately 24 feet from the point of impact.

On May 27, 2009, Plaintiffs filed suit in the Circuit Court of Columbia County, Arkansas, against Union Pacific Railroad, Alfred Brown, the train's engineer, and Steve Holford, the train's conductor. ECF No. 2. In the Complaint, Plaintiffs allege claims against Defendants for negligence based upon inadequate audible warnings; inadequate visual warnings; failure to exercise reasonable care in its train operations; failure to operate train at a safe speed; failure to inspect and repair unsafe crossing conditions; specific unsafe crossing conditions; failure to report unsafe crossing conditions; failure to work with state and local authorities to maintain proper signs, signals, and markings; and, failure to properly train, instruct and manage its employees with respect to its operating practices and rules. Plaintiffs also allege a claim against Defendants for intentional disregard for public safety. ECF No. 2.

On August 14, 2009, Defendants removed the case from the Circuit Court of Columbia County to this Court pursuant to the Court's federal question jurisdiction under the Interstate Commerce Commission Termination Act. ECF No. 1.

**2. Applicable Law**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a federal court is authorized to grant summary judgment in a case. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact exists on an issue where the

nonmovant bears the burden of proof at trial. *Id.* at 324. A mere scintilla of evidence in support of the non-movant's position is insufficient. *Anderson,* 477 U.S. at 252. To survive a motion for summary judgment, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Parks v. City of Horseshoe Bend, Arkansas,* 480 F.3d 837, 839 (8th Cir. 2007) (citation omitted). As stated in Rule 56, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

### 3. Discussion

Defendants claim they are entitled to summary judgment on the following claims in Plaintiffs' Complaint: (1) the locomotive horn did not provide a sufficient audible warning; (2) the locomotive was traveling at an excessive speed; (3) the train crew failed to keep a lookout and failed to apply emergency breaking; (4) Defendants failed to install adequate warning devices at the crossing; and (5) punitive damages. ECF No. 61. This court will address each one of these claims separately.

#### A. Claim that horn did not provide a sufficient audible warning

Paragraph 19 of the Plaintiffs' Complaint alleges:

Defendant railroad and its crew breached their duty to ensure the horn on the locomotive involved in the accident complied with the audibility requirements of 49 CFR Section 229.129. Defendant railroad has no evidence that the train horn complied with 49 C.F.R. Section 229.129 at the time of this accident. In fact, the horn did not provide sufficient audible warning of the train's approach prior to this accident.

According to 49 C.F.R. § 229.129(a), "each lead locomotive shall be equipped with a locomotive horn that produces a minimum sound level of 96 dB(A) and a maximum sound level of 110 dB(A) at 100 feet forward of the locomotive in its direction of travel." In support of their claim for summary judgement, the Defendants reference the affidavit of Mike Fann**.** ECF No. 61-6. According to Mr. Fann: (1) he tested the horn that was on the locomotive in question; (2) the horn was tested in compliance with 49 C.F.R. § 229.129**;** and (3) the horn met and exceeded the audibility requirement of 96dB(A)**.** ECF No. 61-6.

Although Plaintiffs argue Defendants can not show the horn that was tested was from the locomotive in question and can not show the horn was in substantially the same condition when tested as on the date in question, they offer no summary judgment proof to support these arguments. Once the Defendants identify evidence that demonstrates the absence of a genuine dispute of fact, the Plaintiffs must make a showing of proof sufficient to establish their allegation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**.**

This Court recommends Defendants be granted summary judgment on the Plaintiffs' negligence claim based on the claim that the horn did not provide a sufficient audible warning**.** However, this Court recommends, and Defendants' concede (ECF No. 97, Pg. 5), that the issue whether Plaintiff Rawls was alerted to the presence of the train by the horn is relevant to the issue of comparative fault.

**B. Claim that the locomotive was traveling at an excessive rate of speed**

Defendants seek summary judgment pursuant to federal preemption on Plaintiffs' claims that relate to the train traveling at an excessive rate of speed. Federal law generally preempts state law claims based on excessive speed in train accidents. In order to avoid preemption a plaintiff must

show that his claim is an exception to the general rule. Plaintiffs' excessive speed claim in this case has five different bases and each will be discussed herein. Based on the discussion below, Plaintiffs' excessive speed claims are preempted.

### (1) Excessive rate of speed

Defendants argue that pursuant to 49 C.F.R. § 213.9(a) the Plaintiffs' allegations of excessive train speed should be preempted because the train in question was traveling under the maximum speed allowed under this section. The affidavit of Ronnie C. Taylor establishes the track at the Oak Street crossing was properly classified as Class IV on the day of the accident. ECF No 61-5. The maximum speed on a Class IV track is 60 miles per hour. *See* 49 C.F.R. § 213.9(a). According to the affidavit of Mark Pollan, the train in question was traveling 48 mph when the emergency brakes were applied. ECF No. 61-7.

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA") with the purpose of promoting "safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." *See* 49 U.S.C. § 20101. The FRSA also contains an express preemption provision which displaces the state's authority to regulate railroad safety when the Secretary of Transportation "prescribes a regulation  or issues an order covering the subject matter of the State requirement." *Id*. § 20106(a)(1)-(2).

On August 3, 2007, however, Congress clarified its position regarding state law causes of action and FRSA's preemptive effect:

(b) Clarification regarding State law causes of action.

 (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property alleging that a party -

(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c) Jurisdiction. Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

*Id.* § § 20106(b)-(c).

According to Plaintiffs, the 2007 Preemption Clarification Amendment to 49 U.S.C. § 20106 support the argument that there is no preemption of claims where the railroad has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation by the FRA. ECF No. 86, Pages 19-20. Both parties agree the timetable speed at the crossing in question was 45 mph**.** ECF No. 97, Pg. 6, and ECF No. 86, Pg. 14. Further, as discussed above, the train in question was traveling 48 mph when the emergency brakes were applied. ECF No. 61-7.

Maximum train speeds are set forth in the FRA regulations at 49 C.F.R. § 213.9(a). In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 675 (1993), the Supreme Court held that 49 C.F.R. § 213.9(a) "cover[s] the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings." *See also Bradford v. Union Pacific Railroad Co.*, 491 F.Supp.2d 831, 839 (W.D. Ark. 2007) (Barnes J.) (holding that federal law preempted an excessive speed claim).

-6-

However, Federal regulations, which specify speed limits for different types of tracks and trains, are not affected by internal railroad policies. *See St. Louis Sw. Ry. Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995). Furthermore, in *Murrell v. Union Pacific Railroad Co.*, 544 F. Supp. 2d 1138, (D. Or. 2008) the railroad's timetables for speed were found to be internal rules not created pursuant to a regulation or order issued by either of the Secretaries as discussed in  49 U.S.C. § 20106(b)(1)(B), and as such not a bar to preemption.  The Federal regulations, which specify speed limits for different types of tracks and trains preempt Plaintiffs' claim.

### (2) Event recorder

Plaintiffs argue Defendant U.P. has not produced data that would establish the train was equipped with an in-service event recorder and as a result, the train should have slowed to 30 mph pursuant to 49 C.F.R § 229.135. Plaintiffs further state because the train was traveling in excess of 30 mph, the failure to have an in-service event recorder would be negligent.  ECF No. 2, Pg. 9. Defendants seek a summary judgment on this claim of negligence.

Defendants have attached the affidavit of Mark Pollan which establishes the locomotive involved in the accident was equipped with a functioning event recorder on the day of the accident. ECF No. 61-7.  Further, 49 C.F.R. § 229.135 does not regulate the speed of train, but instead simply designates which trains must carry an event recorder. *Stevenson v. Union Pacific Railroad Co.*, 110 F.Supp.2d 1086, 1088 (E.D. Ark. 2000).

Plaintiffs have not offered any proof to support their claim that  train was not equipped with an in-service event recorder.  Plaintiffs have failed to show a genuine issue of material fact with regard to train being equipped with an in-service event recorder.   Plaintiffs' excessive speed claim on this basis fails.

### (3) Failure to comply with slow order

Plaintiffs' claim Defendants failed to comply with a slow order fail for the same reasons at set forth in part (B)(1) above regarding Plaintiffs excessive speed claim.  Plaintiffs cannot produce a regulation or order from the FRA reducing the train speed at the crossing in question to less than 48 miles per hour.  *See* 49 U.S.C. § 20106(b)(1)(A).   To avoid preemption of the slow order claim, Plaintiffs must show Defendants failed to issue or comply with a slow order for the crossing in question arising from U.P.'s own "plan, rule, or standard that it created pursuant to a regulation or order" issued by the Secretary of Transportation or the Secretary of Homeland Security.  *See* § 49 U.S.C. 20106(b)(1)(B).

Although Plaintiffs do refer to different portions of U.P.'s policies which deal with vegetation control and crossing maintenance, Federal regulations, which specify speed limits for different types of tracks and trains, are not affected by internal railroad policies.  *See St. Louis Sw. Ry. Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995).   This claim of excessive speed is preempted.

### (4) Existence of a specific individual hazard

Plaintiff claims the train should have slowed because of a specific individual hazard.  The Supreme Court in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 675 (1993) recognized that a specific, individual hazard exception to federal preemption based upon discrete and local hazards.  The Second Circuit Court of Appeals has recognized that a car stalled on the tracks at a grade crossing is a "specific individual hazard" which "triggers a duty to slow or stop under common law".  *See Macfarlane v. Canadian Pacific Ry.* Co. 278 F.3d 54, 59 (2nd Cir. 2002).   The *Macfarlane* Court specifically stated that a car stalled on the tracks is exactly the kind of "specific individual hazard" that was contemplated by the *Easterwood* Court. *Id*.

When the Motion for Partial Summary Judgment was filed, Defendants were unclear what Plaintiffs alleged to be the "specific individual hazard" at the crossing.  ECF No. 97, Pg. 11. However, Plaintiffs' responsive brief shows their argument in this case is that there was a vehicle stalled on the tracks and the train crew failed to timely brake for that "specific, individual hazard." Defendants acknowledge the train crew had a duty to take precautions to avoid a collision when it became apparent that Rawls would not clear the crossing.  They agree this duty is not preempted in so far as it does not relate to the speed of train.  ECF No. 97, Pg. 12.   However, as to this allegation supporting a claim for excessive speed, that claim is preempted.

### (5) Existence of essentially local hazard

Plaintiffs' also appear to claim that the train should have slowed as it approached the crossing because of an essentially local hazard, namely, a state statute requiring vegetation control at a crossing.  An essentially local safety hazard is a statutory exception to federal preemption under the FRSA.  *See Stevenson v. Union Pacific Railroad Co.*, 110 F.Supp.2d 1086 (E.D. Ark. 2000).  The statutory exception for an essentially local safety hazard is a narrow one and requires a state law, regulation, or order that remedies a local hazard.  *See Stevenson*, 110 F.Supp.2d at 1088.  The FRSA provides that a state may enforce a state law, regulation, or order relating to railroad safety, notwithstanding the existence of FRA regulations on the same subject, where the state law, regulation, or order is necessary to eliminate or reduce an essentially local safety or security hazard. *See* 49 U.S.C. § 20106(a)(2)(A).

In this matter, Plaintiffs rely on the vegetation statute, Ark. Code Ann. § 23-12-201(a), to support the existence of an essentially local hazard that would have required the train to reduce its speed.  This statute requires vegetation to be cleared at crossings for a distance of fifty feet on each

side of the centerline between the rail and for a distance of one hundred yards on each side of the centerline from the public road or highway for the maintenance length. However, this statute does not set a speed for the crossing in question that is lower than the FRA maximum speed of 60 mph.

Based on the foregoing, the Court finds all five of the Plaintiffs' claims of excessive speed are preempted and therefore recommends that Defendants be granted summary judgment on the Plaintiffs' negligence claim based upon excessive speed. It should be noted that Plaintiffs argue extensively in their response that their negligence claim based on lack of proper vegetation control pursuant to Ark. Code. Ann. § 23-12-201(a) is not preempted. Defendants make it clear in their response that they have not argued otherwise on this point and this claim is not affected by this ruling on Defendants' Motion for Summary Judgment.

### C. Claim that train crew failed to keep a lookout and failed to apply emergency braking

Defendants seek summary judgment on Plaintiffs' claims that the train crew failed to keep a proper lookout and failed to apply the emergency braking. Under Arkansas law, a train crew has a duty to take precautions to avoid a collision at a crossing when it becomes apparent that a traveler will not stop before placing himself in peril. *Lovett v. Union Pacific Railroad Co.*, 201 F.3d 1074, 1083-1084 (8th Cir. 2000) (citing *Northland Ins. Co. v. Union Pacific Railroad Co.*, 309 Ark. 287, 291-292, 830 S.W.2d 850, 853 (1992)).

To survive summary judgment on a claim that the train crew failed to keep a proper lookout, Plaintiffs have the burden to produce some evidence, other than speculation or guesswork, that something was present at the crossing to be seen by crewmen keeping a proper lookout. *See Murrell v. Union Pacific Railroad Company*, 544 F.Supp.2d 1138, 1155-56 (D. Or. 2008).

Plaintiffs have submitted summary judgment proof that the Defendant Alfred Brown saw Plaintiff Rawls's truck  stopped on the track and people getting out of the truck. ECF No. 86-1, Pg. 17-18.  Defendant Brown testified he first saw the truck approximately 17 seconds before impact. ECF No. 86-1, Pg. 19.  Defendant Brown was the engineer of the train.  Plaintiffs refer to Plaintiff Johnson's testimony as summary judgment proof.  Plaintiff Johnson stated Rawls only needed one second to exit the truck before the impact.  ECF No. 86-1, Pg. 14.  Plaintiffs also rely on the opinions of Defendants' expert, Gary Wolf.  Wolf, in his expert report, concludes the impact would have been two seconds later if the crew had engaged the brakes 19 seconds before the impact.  ECF No. 61-4.

In viewing these facts in a light most favorable to Plaintiffs, a reasonable jury could find Defendants failed to keep a proper lookout and apply emergency braking.  Accordingly, this Court recommends Defendants' summary judgment as to Plaintiffs' negligence claim based on failure to keep a proper lookout and failure to apply emergency braking be denied.

### D. Claim based on failure to install adequate warning devices at crossing

According to Defendants, Plaintiffs' claim that the Oak Street crossing was protected by inadequate warning devices is preempted by federal law and should be dismissed.  Where crossbuck signs have been installed with federal funds, claims that the warning devices at the crossing are inadequate are preempted.  *See Bock v. St. Louis Southwestern Railway Co.*, 181 F.3d 920, 922 (8th Cir. 1999) (stating that "our court has been quite clear that if federal funds have been expended for warning devices at a grade crossing, state law tort claims alleging negligence in the maintenance of the crossing are preempted"); *see also Union Pacific Railroad Co. v. Sharp*, 330 Ark. 174, 191, 952 S.W.2d 658, 667 (1997) (holding that "once warning devices paid for with federal funds are installed

and operating, the railroad's common-law duty to determine what warning devices are adequate for a particular crossing ceases, and it is entitled to the benefit of federal preemption").

Defendants have clearly established that federal funds were used for the warning devices at the crossing in question.  According to Defendants, in 1980, St. Louis Southwestern Railway Company ("SLSW") and the Arkansas State Highway and Transportation Department ("AHTD") completed a statewide project identified as Job 1513 for upgrading the crossbuck signs on the SLSW railway system in Arkansas.  Ninety percent of the cost of Job 1513 was paid for with federal funds administered by the Federal Highway Administration ("FHWA").  ECF No. 61-2 and 61-3.  The crossing inventory for Job 1513 identifies the Oak Street crossing by name, milepost number, and DOT number.  The inventory indicates the Oak Street crossing received one crossbuck sign and one post as part of Job 1513. ECF No. 61-2 and 61-3.

Plaintiffs have not offered any proof to support their claim that no federal funds were used to pay for warning devices at the Oak Street crossing.  Plaintiffs have failed to show a genuine issue of material fact with regard to the federal funding of the warning devices in question. Accordingly, this Court recommends Defendants' summary judgment as to Plaintiffs' claim based on inadequate warning devices be granted.[1]

_____

[1] This Court notes Plaintiffs have argued the presence of stop signs at the crossing in question made the crossing more dangerous.  ECF No. 86, Pgs. 36-37. This court is not considering this claim within its analysis of preemption based on federal funding of warning devices, nor does this Court find Defendants have addressed this claim in their Partial Motion for Summary Judgment.

### E. Punitive Damages

Defendants seek summary judgement as to Plaintiffs' claim for punitive damages. To support a claim for punitive damages, it must be shown that the negligent party knew or should have known that their act of negligence would result in injury, and that they continued a course of conduct with a conscious indifference to the consequences, from which malice may be inferred. *D'Arbonne Construction Co. v. Foster*, 354 Ark. 304, 308, 123 S.W.3d 894, 898 (2003). *See Also* AMI 2218(2010).

Plaintiffs assert summary judgment evidence in support of their claim for punitive damages including; (1) Defendant Brown saw Plaintiff Rawls's truck stalled on the tracks and that he saw people getting out, (2) Brown further stated he saw Rawls' truck approximately 17 seconds before the impact, (3) Defendants' expert indicates the impact would have been two seconds later if the crew had engaged the brakes 19 seconds before the accident, and (4) Defendant Brown has been involved in previous train accidents.

Accordingly, Plaintiffs have shown more than a scintilla of evidence that creates a genuine issue of material fact for trial on the issue of punitive damages. Accordingly, this Court recommends Defendants' summary judgment as to Plaintiffs' claim punitive damaged be denied.

### 4. Conclusion

Based upon the foregoing, this Court recommends Defendants' Motion for Partial Summary Judgment (ECF No. 58) be **GRANTED IN PART and DENIED IN PART**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

reminded that objections must be both timely and specific to trigger *de novo* review by the district court. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

      ENTERED this 22nd day of February, 2011.

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE