IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CODY RAWLS, *et al.*,                                                        PLAINTIFFS

V.                               Case No. 1:09-CV-01037

UNION PACIFIC RAILROAD, *et al.*,                                    DEFENDANTS

## ORDER

Plaintiffs filed this suit in the Circuit Court of Columbia County, Arkansas in May 2009. The suit alleges various claims for negligence arising out of a train-crossing wreck. The Defendants removed the case to this Court in August 2009. The Defendants claimed that the Interstate Commerce Commission Termination Act ("ICCTA") "completely preempted" the Plaintiffs' crossing-design claims, turning those claims into a federal question and giving the Court jurisdiction. The Plaintiffs disagreed and asked the Court to remand the case. The Court denied that request. (ECF No. 15).

Recent cases have called into question the Court's basis for denying remand. If the Court denied remand on an improper basis, then subject-matter jurisdiction might be lacking. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2006). To determine whether the Court has subject-matter jurisdiction, the Court has asked the parties each to issue a single brief on the following question:

> **Does the ICCTA completely preempt any of the Plaintiffs' state-law negligence claims?**

The parties have filed their briefs. (ECF Nos. 227 & 228). Upon consideration, the Court finds that it lacks subject-matter jurisdiction over this case. The case will therefore be remanded to the Circuit Court of Columbia County.

## BACKGROUND

On May 23, 2008, Plaintiffs' pickup truck stalled on the Oak Street railroad crossing in McNeil, Arkansas. A Union Pacific train hit the stalled truck. One Plaintiff, Roy Dell Johnson, escaped the truck and tracks before the collision. The other Plaintiff, Cody Rawls, did not; he was thrown 24 feet from the collision.

On May 27, 2009, Plaintiffs filed suit in the Circuit Court of Columbia County against Union Pacific Railroad, Alfred Brown (the train's engineer), and Steve Holford (the train's conductor). In the Complaint, Plaintiffs make claims against Defendants for negligence based on inadequate audible warnings; inadequate visual warnings; failure to exercise reasonable care in its train operations; failure to inspect and repair unsafe crossing conditions; specific unsafe crossing conditions; failure to report unsafe crossing conditions; failure to work with state and local authorities to maintain proper signs, signals, and markings; and failure to properly train, instruct and manage its employees regarding its operating practices and rules. Plaintiffs also make a claim against Defendants for intentional disregard for public safety.

On August 14, 2009, Defendants removed the case to this Court. In removing, Defendants argued that this Court has federal-question jurisdiction over this case based on complete preemption.

## DISCUSSION

"Courts do not usually raise claims or arguments on their own. But federal courts have an

independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1202 (2011). "Jurisdictional rules may…result in the waste of judicial resources and may unfairly prejudice litigants." *Id.* "Objections to subject-matter jurisdiction, however, may be raised at any time." *Id.*; *Smith v. Unum Life Ins. Co. of America*, No. 4:06-cv-00280 JMM, 2006 WL 3234864, at *2 (E.D. Ark. Nov. 6, 2006). Indeed, as noted above, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Court must thus assess, even at this late date, whether it has jurisdiction over this case.

### I.   Removal

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A party must successfully allege specific criteria before a federal court may retain jurisdiction over the case. *See generally* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3522 (2d ed. 1984 & Supp. 2008). A case may be removed from state court to federal court if the defendant can show that the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). Original jurisdiction exists in federal court when the case involves a federal question or when the parties are diverse. 28 U.S.C. §§ 1331; 1332. If a case is removed to federal court, the removing party bears the burden of proving that federal jurisdiction exists. Such jurisdiction must be proved in the notice of removal itself; it may not be established by some later document. *See Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995). Once a case is removed to federal court, a

plaintiff may move to remand to state court if there is a defect in the removal process, or if the federal court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c). The court's removal jurisdiction is strictly construed, and all doubts are resolved in favor of remand. *Dahl v. R.J. Reynolds Tobacco Co.,* 478 F.3d 965, 968 (8th Cir. 2007).

Defendants here base their removal on federal-question jurisdiction. The contents of a well-pleaded complaint determine federal-question jurisdiction. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)). If such a complaint contains claims "arising under" federal law, then federal-question jurisdiction exists. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). There are, however, a few narrow exceptions to that rule. One of them is the subject now before the Court: complete preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

## II. Complete Preemption

The Defendants argue that complete preemption exists in this case because several of the Plaintiffs' claims are covered by the Interstate Commerce Commission Termination Act ("ICCTA") and are therefore completely preempted. According to Defendants, Plaintiffs' crossing-design and construction claims—particularly Plaintiffs' crossing-surface claims—fall within the exclusive jurisdiction of the Surface Transportation Board under the ICCTA.

Complete preemption exists where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim…." *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Such preemptive force "wholly displaces the state-law cause of action.…" *Aetna Health Inc. v. Davila*,

542 U.S. 200, 207 (2004) (quoting *Anderson*, 539 U.S. at 8). A state-law action falling under a completely preemptive federal statute "is in reality based on federal law." *Id.* Being based on federal law, the state-law action may be removed to federal court.

The distinction between complete and ordinary preemption is important. This Court's earlier remand opinion and the Defendants' arguments conflate ordinary preemption and complete preemption. Complete preemption is not ordinary preemption. *Williams v. Nat'l Football League*, 598 F.3d 932, 935 (8th Cir. 2009) (Colloton, J., dissenting) ("[O]ur cases seem to have confused 'ordinary preemption' with 'complete preemption.'"); *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 677 n.6 (8th Cir. 2009) ("Ordinary preemption is distinct from complete preemption…."). Complete preemption, for the reasons stated above, "has jurisdictional implications." *Bates v. Mo. & N. Ark. R.R. Co.*, 548 F.3d 634, 636 (8th Cir. 2008). Ordinary preemption does not. *Id.* "Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393 (emphasis original). "Therefore, that the ICCTA may preempt some of the negligence claims asserted by the [plaintiffs] does not create federal question jurisdiction." *Trejo v. Union Pac. R.R. Co.*, No. 3:10-cv-00285 JLH, 2011 WL 309614, at *3 (E.D. Ark. Jan. 28, 2011). To be heard in federal court, more than ordinary preemption is required.

"Complete preemption, as opposed to ordinary or conflict preemption, is rare.…" *Thomas v. U.S. Bank Nat'l Ass'n ND*, 575 F.3d 794, 797 (8th Cir. 2009). Courts are reluctant to find it. *Bates*, 548 F.3d at 636 (quoting *Gaming Corp. of America. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996)). It is a matter of dispute whether complete preemption can exist if the

federal statute in question does not provide the exclusive cause of action for the claim at issue. The Eighth Circuit has said that complete preemption "only applies if the 'federal statutes at issue provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Thomas*, 575 F.3d at 797 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Yet the Eighth Circuit has also said that "[t]he issue of whether complete preemption exists is separate from the issue of whether a private remedy is created under a federal statute." *Gaming Corp. of America*, 88 F.3d at 547 (citing *Caterpillar Inc.*, 482 U.S. at 391 n. 4). Regardless, "the intent of Congress is what controls." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 484 U.S. 41, 45 (1987)).

Complete preemption is more difficult to prove than ordinary preemption. *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1070 n.1 (11th Cir. 2010) ("Complete preemption, as a narrow exception to the well-pleaded complaint rule, carries a higher burden than proving a defense based on preemption."). Complete preemption is an "extreme and unusual outcome." *Fayard v. N.E. Vehicle Servs., LLC*, 533 F.3d 42, 49 (1st Cir. 2008). Defendants seeking removal under complete preemption "bear a significant burden." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005). "Complete preemption analysis thus depends on the existence of palpable evidence that Congress intended to displace completely a particular category of state-law causes of action, as manifested by the federal statute's language, overall structure, and legislative history." *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik*, 510 F.3d 77, 99 (1st Cir. 2007).

Finally, complete-preemption analysis differs from ordinary-preemption analysis in focus. Subtle facts and distinctions about the effect of a successful claim are important for ordinary-preemption analysis. Complete-preemption analysis, on the other hand, focuses more

on the relevant federal statute than on the state-law claim. *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 275 (2nd Cir. 2005) ("But the higher-order inquiry into whether the RLA or the LMRA is completely preemptive is different [than ordinary-preemption analysis], and requires looking at the federal statute rather than a particular state-law claim."); *Shupp v. Reading Blue Mtn. & N. R.R. Co.*, ___ F. Supp.2d___, 2012 WL 398811, at *8 (M.D. Pa. 2012).

### III.   Complete preemption under the ICCTA

The Interstate Commerce Commission Termination Act is the relevant federal statute in this case. The ICCTA created the Surface Transportation Board to effectively regulate certain aspects of railroad operations. 49 U.S.C. §§ 10101–10102. The ICCTA is particularly concerned with economic regulation. *Fayus Enterprises v. BNSF Ry. Co.*, 602 F.3d 444, 451 (D.C. Cir. 2010) ("the core of ICCTA preemption is 'economic regulation'"). The ICCTA's jurisdictional section was written "in view of the Federal policy of occupying the entire field of economic regulation of the interstate rail transportation system." H.R. Rep. No. 104–311, at 95–96 (1990), *reprinted in* 1995 U.S.C.C.A.N. 793, 807–08. Of the 15 government policies on railroad-industry regulation stated in the ICCTA, nine explicitly involve economics. 49 U.S.C. § 10101(1)–(15) (mentioning "rates," "revenues," "competition," economic conditions," "reasonable rates," "rate increases," "wages," "pricing," and "cost information"). Thus, as the Fifth Circuit observed, "Congress was particularly concerned about state *economic* regulation of railroads when it enacted the ICCTA." *Elam v. K.C. S. Ry. Co.*, 635 F.3d 796, 805 (5th Cir. 2011) (emphasis original).

The ICCTA's exclusive-jurisdiction requirement gives rise to the Defendants' complete-preemption argument. *Id.* at 805 ("The exclusive-remedies provision is 'the relevant part of

Section 10501(b)' for determining the scope of the ICCTA's preemption of state law." (quoting *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 410 (5th Cir. 2010))). That requirement states that:

> (b) The jurisdiction of the Board over—
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). According to the Defendants, some of the Plaintiffs' claims, particularly their crossing-surface claims, fall under the exclusive-jurisdiction provision and are thus completely preempted. Plaintiffs counter that their claims are ordinary crossing-accident negligence claims that do not run afoul of the exclusive-jurisdiction provision and are therefore governed by state law.

  **a. Case law**

The most recent ICCTA complete-preemption case on point is the Fifth Circuit's *Elam v. K.C. S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011). *Elam* involved a crossing accident in which the plaintiffs' car hit a stationary train that was blocking a crossing. The plaintiffs' claims relied in part on a Mississippi anti-blocking statute to argue negligence per se. That claim, the Fifth Circuit said, was completely preempted. The plaintiffs' other negligence claims, however, were

not preempted. The present importance of the case is its holding. The court combined the ICCTA's history and purpose with previous ICCTA preemption cases in stating that "§ 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm." *Id.* at 807. "Put another way," the court said, "when a plaintiff's tort claim directly attempts to manage or govern a railroad's decisions in the economic realm," the claim is federal. *Id.* Because the anti-blocking statute on which the *Elam* plaintiffs based their claim "directly attempt[ed] to manage [the railroad]'s switching operations," it was an economic regulation. *Id.*

The *Elam* court did not fail to recognize the converse of its holding. First, "§ 10501(b) does not expressly preempt generally applicable state laws that have a mere 'remote or incidental effect on rail transportation.'" *Elam*, 635 F.3d at 805 (quoting *Franks*, 593 F.3d at 410). Second, and more specifically, "[a] typical negligence claim seeking damages for a typical crossing accident (such as the Elams' simple negligence claim) does not directly attempt to manage or govern a railroad's decisions in the economic realm." *Id.* at 813. "[T]he effects of state negligence law on rail operations are merely incidental." *Id.* (citing *Franks*, 593 F.3d at 411).

This Court is not bound by *Elam's* rule, but finds it to be a correct statement of ICCTA complete-preemption bounds. The Court therefore adopts *Elam's* rule.

Closer to home, the Eastern District of Arkansas recently addressed the ICCTA's complete-preemption scope. In *Trejo v. Union Pac. R.R. Co.*, No. 3:10-cv-00285 JLH, 2011 WL 309614 (E.D. Ark. Jan. 28, 2011), the court found that crossing-accident negligence claims based on the unsafe construction and design of a crossing are not completely preempted by the ICCTA. The court first noted that the absence of a superseding federal tort cause of action for the plaintiffs' claims "militates against concluding that Congress intended the ICCTA to completely

9

preempt state tort claims." *Id.* at *4. Next, the court noted that "[a] state tort action does not 'manage' or 'govern' railroad transportation but rather, at most, has some 'incidental effect' on railroad transportation." *Id.* Finally, the court noted that "Congress intended that the ICCTA regulate economic matters, not safety." *Id.* at *5 (citing *Watkins v. RJ Corman R.R.*, No. 7:09-114-KKC, 2010 WL 1710203, at *3 (E.D. Ky. Apr. 27, 2010)). "[P]ersonal injury claims involving trains," the court found, are more appropriately based on the Federal Railroad Safety Act. *Id.* That act, however, "does not completely preempt state tort actions." *Id.* (citing *Bates v. Mo. & N. Ark. R.R. Co.*, 548 F.3d 634, 637 (8th Cir. 2008)).

There are other cases that provide helpful guidance. In *Anderson v. Union Pac. R.R. Co*, No. 10-193-DLD, 2011 WL 4352254 (M.D. La. Sept. 16, 2011), the court found that ICCTA complete preemption was lacking. "In the instant matter," the court said, "plaintiffs' claims that they suffered personal injuries as the result of defendant's negligent maintenance and construction of the railroad bridge crossing do not equate to state economic regulation of railroads. Plaintiffs have pled a simple suit for personal injury damages based on state law negligence." *Id.* at *4. Likewise, in *Watkins* the court found a lack of ICCTA complete preemption because "[i]t cannot be said that application of Kentucky negligence and nuisance law in the present case would have the effect of 'managing' or 'governing' rail transportation." *Watkins*, 2010 WL 1710203, at *3.

### b. Application

Based on the above law, the question before the Court is whether any of the Plaintiffs' claims "directly attempt to manage or govern a railroad's decisions in the economic realm," or whether they merely constitute a "typical negligence claim seeking damages for a typical

crossing accident" that "does not directly attempt to manage or govern a railroad's decisions in the economic realm." *Elam v. K.C. S. Ry. Co.*, 635 F.3d 796, 807; 813 (5th Cir. 2011).

Defendants argue that the Plaintiffs' crossing-surface claims are completely preempted because they involve the "regulation of rail transportation" under 49 U.S.C. § 10501(b). Plaintiffs' claims, Defendants argue, "would necessitate shutting down the mainline operations altogether to rebuild the tracks and roadbed." (ECF No. 227, at 5). Defendants propose their own test under which the ICCTA completely preempts a negligence action where 1) "the action is predicated on a 'defect' in the design or construction of the railroad"; and 2) "the alleged 'defect' would require a substantive modification to the structure or surface of the railroad in order to be remedied." (ECF No. 227, at 5). The Defendants discuss six ICCTA preemption cases to show that their proposed rule "ties all six cases into a coherent body" and "provides a concrete test to guide litigants in the future." (ECF No. 227, at 20).

The Court finds that *Elam's* test—whether the plaintiff's claims directly attempt to manage or govern a railroad's decisions in the economic realm—is the better test. It addresses the ICCTA's economic focus and more persuasively captures ICCTA history and cases. The Defendants' test fails to consider the importance of the economic component of ICCTA analysis.

The Defendants' six cases, while all helpful, are inapplicable—not merely because they are not precedential, but also because they are *ordinary preemption* cases. The analysis of those cases is in accordance with the less-stringent ordinary-preemption requirements. As noted above, ordinary preemption is not complete preemption.

Under the stringent complete-preemption standard, the Defendants must show that at least one of the Plaintiffs' claims directly attempts to manage or govern Union Pacific's

decisions in the economic realm. It is not enough for Plaintiffs' claims to have a mere remote or incidental effect on rail transportation.

The Court is unable to see how Plaintiffs' crossing-surface claims—or any of their other claims—directly attempt to manage or govern Union Pacific's decisions in the economic realm. Plaintiffs are not trying to dictate Union Pacific's schedule, rates, or wages. Nor are the Plaintiffs trying to dictate the broader area of track- and-crossing location and abandonment. *Cf. Port City Properties v. Union Pac. R.R. Co.*, 518 F.3d 1186 (10th Cir. 2008) (finding abandonment-of-spur claim completely preempted).

Rather, Plaintiffs seem to make typical negligence claims seeking damages for a typical crossing accident. Those claims do not directly attempt to manage or govern Union Pacific's decisions in the economic realm. The effect of Arkansas negligence law as used by Plaintiffs is merely incidental to rail operations. Despite Defendants' assertions, a verdict for Plaintiffs will subject the Defendants to money damages—not a court order demanding that it relocate its tracks. To be sure, tort suits may operate as regulation. *Kurns v. R.R. Friction Prods. Corp.*, ___U.S.___, 132 S. Ct. 1261, 1269 (2012) ("regulation can be…effectively exerted through an award of damages") (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323–42 (2008). "Congress may reasonably determine," however, "that incidental regulatory pressure is acceptable, whereas direct regulatory authority is not." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 186 (1988). "No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension

where was between them." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256 (1984). The tension between federal safety regulation and state safety regulation is not present in this case. The Plaintiffs here seek to impose state *safety* regulation, while the federal regulation in question is *economic*. Still, even if such tension were present, the Court is unable to find that Congress did not intend it.

### IV.   FRSA versus ICCTA

In both their original brief opposing remand and in their brief in response to the Court's briefing order, Defendants failed to address the Federal Railway Safety Act's ("FRSA") role in analyzing complete preemption under the ICCTA. Because the FRSA explicitly addresses safety issues, and because Plaintiffs' claims are fundamentally safety claims, some notice must be taken of the FRSA. Yet even brief notice of the FRSA reveals that this case is not an ICCTA case—it is an FRSA case.

"The FRSA grants the Secretary of Transportation broad regulatory authority over railroad safety." *Kurns*, 132 S. Ct. at 1267. In the mid-2000s, several Eighth Circuit courts held that the FRSA completely preempted certain train-derailment safety claims. *Lundeen v. Canadian Pac. R.R. Co.*, 532 F.3d 682, 687–88 (8th Cir. 2008). Congress responded to those cases by amending the FRSA to clarify its preemptive scope. *Grade v. BNSF Ry. Co.*, 676 F.3d 680, 685 (8th Cir. 2012) (quoting *Lundeen*, 532 F.3d at 688). That clarifying amendment confirmed the perseverance of certain state-law safety claims. 49 U.S.C. § 20106(b). The amendment also confirmed that the FRSA's preemption section is "not intended to confer federal question jurisdiction upon the federal courts." *Lundeen*, 532 F.3d at 688 (citing 49 U.S.C. § 20106(c)). In other words, the FRSA explicitly disclaims complete preemption.

As noted above, this case is about safety claims. "The FRSA, not ICCTA, determines whether a state law relating to rail safety is preempted." *Iowa, Chicago & E. R.R. Corp. v. Washington Cnty., Iowa*, 384 F.3d 557, 560 (8th Cir. 2004). In the *Washington County* case, the railroad argued that bridge-replacement funding was an economic issue covered by the ICCTA rather than the FRSA. The Eighth Circuit disagreed, saying: "If [the railroad] is arguing that 'rail safety' for purposes of FRSA preemption does not include the highway safety risks created at rail crossings, that cramped reading of the FRSA is inconsistent with 49 U.S.C. § 20134(a), with the federal rail crossing regulations…, and with common sense." *Id.*

If railroad-bridge funding is a safety issue, then surely the crossing-conditions claims in this case are too. And if the claims here are safety claims, then the ICCTA may not usurp the FRSA in this safety case. Construed together, the ICCTA has its place, and the FRSA has its own. *Id*. But the ICCTA's place is not in this crossing-safety case.

That conclusion is consistent with the record in this case. None of Defendants' motions to dismiss and motions for summary judgment has *mentioned* the ICCTA. That conspicuous absence doesn't prove anything, but it certainly raises the question of how the ICCTA *completely* preempts some of Plaintiffs' claims on the one hand, but is not argued as a basis for ordinary preemption on the other. More broadly, the post-remand absence of the ICCTA from this case suggests that this is an FRSA case and not an ICCTA case.[1]

The point to this FRSA discussion is this: If this is an FRSA case—and the Court finds that it is—and if an FRSA case cannot create federal-question jurisdiction, 49 U.S.C. § 20106(c)—which it cannot—then this case does not belong in federal court.

---

[1] Indeed, the Defendants argued FRSA preemption in one of their summary-judgment motions. (ECF No. 139).

## CONCLUSION

The Plaintiffs' claims, individually and in the aggregate, are typical negligence claims seeking damages for a typical crossing accident that do not directly attempt to manage or govern Union Pacific's decisions in the economic realm. At most, they have a remote or incidental effect on rail transportation. Moreover, they raise safety issues, not economic ones. For these reasons, none of the Plaintiffs' claims are completely preempted by the ICCTA.

The Defendants bear the burden of establishing jurisdiction. Where there are doubts about jurisdiction, favor must be given to remand. Because complete preemption was the only basis for the Court hearing this case, the absence of complete preemption means that the Court lacks subject-matter jurisdiction. Therefore, this case should be and hereby is **REMANDED** to the Circuit Court of Columbia County for further proceedings.

IT IS SO ORDERED, this 10th day of July, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge